The Hon. S. Kate Vaughan

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

UNITED STATES OF AMERICA,

NO.        MJ24-615

11

Plaintiff,

COMPLAINT FOR VIOLATIONS OF
21 U.S.C. §§ 841(a)(1) and (b)(1)(A)

12

v.

13

ROBERT BELLAIR,

14
15

Defendant.

16
17

BEFORE The Honorable United States Magistrate Judge S. Kate Vaughan,

18

United States Courthouse, Seattle, Washington.

19

The undersigned complainant being duly sworn states:

20

**COUNT 1**

21

**(Possession with Intent to Distribute Fentanyl)**

22

On or about December 7, 2023, in Whatcom County, within the Western District of

23

Washington, **ROBERT BELLAIR** did knowingly and intentionally possess with the

24

intent to distribute, a controlled substance, N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-

25

piperidinyl ] propanamide (fentanyl), a substance controlled under Title 21, United States

26

Code.

27

COMPLAINT - 1
United States v. Robert Bellair

1    It is further alleged that the offense involved 400 grams or more of a mixture and

2 substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-

3 piperidinyl ] propanamide (fentanyl).

4    All in violation of Title 21, United States Code, Sections 841(a)(1) and

5 841(b)(1)(A).

6    And the complainant states that this Complaint is based on the following

7 information:

8    I, Kenneth Richardson, being first duly sworn on oath, depose and say:

9    **INTRODUCTION AND AGENT BACKGROUND**

10    1.    I am a Special Agent with the DEA, currently assigned to the Bellingham

11 Resident Office in Bellingham, Washington.  I have been employed as a DEA Special

12 Agent since 2009 and am assigned to investigate drug trafficking organizations operating

13 in the Western District of Washington.

14    2.    My duties and experience as a Special Agent include the enforcement of

15 federal criminal statutes, including statutes related to drug offenses, firearm offenses,

16 money-laundering offenses, and other criminal offenses.  As a Special Agent of the DEA,

17 I am authorized by law to conduct investigations, execute search warrants, and make arrests

18 for federal felony offenses.

19    3.    I have completed the DEA Basic Agent Training program at the DEA

20 Academy in Quantico, Virginia.  I have participated in numerous narcotics investigations

21 at both the local and federal level, and I have participated in the execution of local and

22 federal search warrants.  As a result, I have become familiar with methods of operation of

23 drug traffickers and organizations.  As a Special Agent with the DEA, I have the

24 responsibility of working with other federal and state law enforcement officers in

25 investigations of violations of federal and state-controlled substance laws, including the

26

27

COMPLAINT - 2
United States v. Robert Bellair

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    trafficking and distribution of cocaine, methamphetamine, heroin, fentanyl, marijuana, and

2    other dangerous drugs.

3          4.      I have interviewed numerous drug dealers, drug users, and knowledgeable

4    confidential sources about the lifestyles, appearances, and habits of drug dealers and users.

5    I have become familiar with the manner in which narcotics traffickers smuggle, package,

6    transport, store, and distribute narcotics, as well as how they collect, conceal, and launder

7    drug proceeds.  I am also familiar with the manner in which narcotics traffickers use

8    telephones, cellular telephone technology, internet, telephonic and computer applications,

9    coded communications, slang-filled conversations, false and fictitious identities, and other

10   means to facilitate their illegal activities and mislead law enforcement investigations.  I

11   have observed and have had discussions with other law enforcement personnel about the

12   packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the

13   security measures that narcotics traffickers often employ.  I have examined narcotics

14   customers' supplier lists, pay/owe ledgers maintained by traffickers, and other

15   documentation related to narcotics trafficking.  I have also examined documentation of

16   various methods by which cocaine, methamphetamine, heroin, fentanyl, marijuana, and

17   other illicit drugs are smuggled, transported, and distributed.  I have participated in

18   numerous hours of surveillance of narcotics traffickers.  During surveillance, I have

19   personally observed narcotics transactions, counter surveillance techniques, and the ways

20   in which narcotics traffickers conduct clandestine meetings.  Acting in an undercover

21   capacity, I have acquired dangerous drugs from drug traffickers and learned about methods

22   in thwarting law enforcement officers while trafficking drugs.  I have participated in

23   numerous investigations involving the interception of wire and electronic communications.

24   I have been involved with the review and decoding of veiled intercepted conversations

25   between narcotics traffickers that were subsequently substantiated.  Throughout my career

26   in law enforcement, I have received training from, worked with, spoken with, and gleaned

27

COMPLAINT - 3
United States v. Robert Bellair

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 knowledge from several experienced federal, state, local, and international narcotics

2 officers concerning the use of cell phones and mobile applications by drug traffickers to

3 facilitate drug trafficking.

4      5.     I have also worked on drug investigations involving the use of court-

5 authorized wiretaps under Title III. In that capacity, I have had the opportunity to monitor,

6 listen to, and review transcripts and line sheets documenting the content of intercepted

7 conversations involving the trafficking of cocaine, methamphetamine, fentanyl, heroin,

8 and other narcotics, by persons who used some form of code to attempt to thwart law

9 enforcement detection. I have also spoken with and/or interviewed drug dealers or

10 confidential sources (informants) who were experienced in speaking in coded

11 conversation. I have also participated in investigations into drug dealers who engage in the

12 promotion of prostitution, including interviews and reviewing social media and electronic

13 communication search warrant returns. From these experiences, and also from discussions

14 with other experienced agents, I have gained knowledge regarding the various methods,

15 techniques, codes, and/or jargon used by drug traffickers and those promoting prostitution

16 in the course of their criminal activities, including their use of firearms to protect their

17 related activities and of cellular telephones and other electronic means to facilitate

18 communications while avoiding law enforcement scrutiny.

19      6.     The facts set forth in this Affidavit are based on my own personal

20 observations, knowledge, training, and experience; information obtained from other agents

21 and witnesses; review of documents and records related to this investigation; and

22 communications with others who have personal knowledge of the events and circumstances

23 described herein. This affidavit is intended to show merely that there is sufficient probable

24 cause for the requested search warrant, and therefore does not set forth all of my knowledge

25 about this matter.

26

27

COMPLAINT - 4
United States v. Robert Bellair

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# I.   SUMMARY OF PROBABLE CAUSE

## Overview

7.     The United States, including the DEA, the Bureau of Indian Affairs (BIA), and the FBI, is conducting a criminal investigation of a regional DTO that is supplied primarily by out-of-state sources regarding possible violations of the Target Offenses. Investigators are referring to this regional DTO, to include its out-of-state suppliers, as "Jackson DTO" and have identified Marquis Jackson and Markell Jackson as prominent members of the DTO.

8.     FBI's investigation into the Jackson DTO began in early 2022 and identified that the Jackson DTO is affiliated with a local street gang known as "44 Holly," which is a subset of the Crips gang.  Concurrently, DEA agents learned that in September 2023, several vulnerable persons had recently died from fentanyl overdoses and suspected that Markell Jackson, a member of the Jackson DTO, supplied fentanyl to Lummi Tribal Members during this time period.  Federal, State, and Tribal agencies collaborated and uncovered a network of drug trafficking across multiple states.

## Seizure of Fentanyl from ROBERT JOHN BELLAIR

9.     On December 7, 2023, investigators with DEA, BIA, and Whatcom County Drug and Gang Task Force (WGDTF) were conducting surveillance in Bellingham, Washington and observed Markell Jackson driving in a silver Honda Accord, registered to Jackson's associate, Diyana Abraha. Investigators observed a black 2003 Ford Expedition arrive and park in the vicinity of Jackson's Accord. At the time, the black 2003 Ford Expedition was registered to Daniel Washington, a Lummi Tribal Member who died in September 2023 from a fentanyl overdose. Investigators observed BELLAIR walk from the Expedition to Jackson's Accord and enter the vehicle. After only a few minutes, BELLAIR exited Jackson's Accord carrying a large plastic whey protein container. Investigators followed the Expedition away from the public parking lot. WGDTF officers

COMPLAINT - 5
United States v. Robert Bellair

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    conducted an investigative traffic stop of the Expedition BELLAIR was driving. During

2    the stop, officers observed what they believed to be blue fentanyl pills stuck to the

3    BELLAIR's shirt. Officers also observed several blue fentanyl pills spilled onto the

4    driver's floor area.

5         10.    Officers applied for a State of Washington search warrant and was granted

6    authorization to search the Expedition. During a search of the Expedition, officers located

7    approximately 6,500 fentanyl pills from inside of the vehicle, including inside the large

8    plastic whey protein container which BELLAIR was observed carrying from Jackson's

9    Accord. The fentanyl pills recovered from BELLAIR were sent to the Washington State

10   Patrol Marysville Crime Laboratory for testing. On February 12, 2024, the lab confirmed

11   the pills recovered from BELLAIR'S vehicle were positive for the presence of fentanyl.

12   BELLAIR was not arrested.

13        11.    The fentanyl pills recovered from BELLAIR had a gross weight of

14   approximately 734 grams.

15        12.    On August 20, 2024, DEA and WGDTF investigators were advised by FBI

16   that a phone used by Markell Jackson was "pinging" en route from the Seattle area north

17   bound along Interstate 5 toward Bellingham. FBI also notified investigators that during a

18   wire intercept, Markell Jackson told Terrique Milam that Jackson was driving an "Acura."

19   Agents established surveillance in the area of Lummi Tribal Lands and located a black

20   Acura 4-door sedan with a paper temporary tag issued from the state of Texas. The Texas

21   Department of Motor Vehicle records indicated that the tag was registered to Kennedy

22   Raye Omboga, a known criminal associate of Markell Jackson.  Investigators followed the

23   Acura to a rural address located at 4656 Bay Road, Blaine, WA.  After the Acura departed

24   the rural address, investigators drove into the lot and observed BELLAIR, along with an

25   unidentified female, standing next to the same black Ford Expedition as described in the

26

27

COMPLAINT - 6
United States v. Robert Bellair

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  previous paragraph. Investigators believe that Jackson had likely just met with BELLAIR

2  while on that rural property to sell BELLAIR drugs.

3        13.      On September 16, 2024, FBI notified investigators that a phone used by

4  Markell Jackson was again "pinging" in the vicinity of Bellingham, WA.  Investigators

5  drove to same rural property at 4656 Bay Road. In the lot, investigators observed the same

6  black Acura with a Texas temporary tag parked on the south side of a camper trailer with

7  a green stripe and the black Ford Expedition was parked on the north side of the trailer.

8  Investigators observed BELLAIR meeting with Jackson at the hood of the Expedition.

9  Shortly thereafter, a gray 2011 Lexus SUV with a New York license plate arrived and

10  parked near the Expedition. Jackson then walked back to the Acura, entered the driver's

11  side, closed the door and remained there. BELLAIR walked to the gray Lexus SUV,

12  greeted the driver, who was later identified as Michael Bolster. BELLAIR, Bolster and a

13  female passenger (later identified as Stephanie Wilson) walked toward the front of the

14  Expedition, where the three of them appeared to interact with one another. Investigators

15  left the rural property and waited nearby for the Lexus SUV to depart. Minutes later, the

16  Lexus SUV left the rural property and investigators followed it to the parking lot of the

17  Silver Reef Casino located on Lummi Tribal Lands. WGDTF deputies and LPD officers

18  contacted Bolster and Wilson as they stepped out of the Lexus. Bolster was uncooperative

19  with officers, refused to answer questions, and used a key fob to lock the Lexus SUV,

20  which later made it difficult to disarm the alarm system of the Lexus. A K-9 was deployed

21  on the Lexus and provided a positive alert for the presence of narcotics.

22        14.      Officers applied for and received a State of Washington search warrant to

23  search the Lexus SUV. During the search of the Lexus SUV, officers located suspected

24  fentanyl powder, fentanyl pills, crack cocaine, a glass meth pipe, foil, and other evidence.

25  The cocaine field tested positive for cocaine. No field test was conducted on the suspected

26  fentanyl pills due to concerns for officer safety while handling fentanyl.  However, given

27

COMPLAINT - 7
United States v. Robert Bellair

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  officers training and experience, and the prior investigation into BELLAIR'S previous

2  possession of fentanyl pills, the pills recovered appeared to be suspected fentanyl.

3                                        **CONCLUSION**

4         15.    Based on the above facts, I respectfully submit that there is probable cause

5  to believe that ROBERT BELLAIR did knowingly and intentionally possess with intent to

6  distribute  a  controlled  substance,  N-phenyl-N- [  1- ( 2-phenylethyl ) -4-piperidinyl  ]

7  propanamide (fentanyl), in violation of Title 21, United States Code, Section 841(a)(1).

8

9  _____

10  Kenneth Richardson

11  Special Agent
    Drug Enforcement Administration

12

13

14  Based on the Complaint and Affidavit sworn to before me by telephone, the Court

15  hereby finds that there is probable cause to believe the Defendant committed the offenses

16  set forth in the Complaint.

    Dated this 30th day September, 2024.

17

18  _____

19  S. KATE VAUGHAN
    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970